2-2-0-8 in Re Kravitch Mr. Adams, please proceed. Good morning, Your Honors. John Adams representing applicant Nick Kravitch in an appeal from a final rejection in the U.S. Patent and Trademark Office. The rejection of all claims 1, 9, and 15 based on the modification of a primary reference to UPM, which is an oil cup by a check valve lubricating nipple of Fischer. The claimed invention is directed to a fitting for lubricating and sealing a valve in which lubricant is injected into the fitting through a button hold fitting. The lubricant is transmitted through the fitting to the valve. It's transmitted under pressure for the purpose of lubricating and sealing the valve. The term lubrication and sealing are commonly used when maintaining a plug valve. These valves are used underground to transmit fluid under pressure, high pressure. It's essential that these fluids, in most cases, are toxic gases. They should not escape through the valve stem out into the atmosphere. Therefore, it's necessary that a lubricant, which is in the form of a sealant. It's a plastic material and the lubricant component is added merely as a means for delivering the sealant to the valve seat. The sealant is formed at the interface between the valve member and the valve seat. It maintains a high pressure to maintain the gas in the valve and prevent escape of the gas out of the valve. In comparison, the primary reference to UPM is a 1938 oil cup that was mounted on an engine block to deliver oil by gravity flow to a king bolt. A king bolt back then was a device for connecting the wheel to the axle. The king bolt had to be supported within a bushing. This bushing has to be cleared of debris and dirt because it's exposed to the atmosphere. The lubricant had to be provided periodically and in large flow to flow through the bearing. The problem was, how do you deliver the oil periodically and how do you flush the bearing? And they did this by simply mounting an oil cup on top of the, and connected to, the king bolt. Now, our invention is not anything similar in construction or function to the oil cup of UPM. UPM is not analogous. It's not analogous because it's a lubricating device. The claimed invention is a device for sealing a valve. In UPM, it's necessary that the flow of oil be through the part to be lubricated. There's no sealing. With our device, the valve must be sealed. The lubricant must be contained. So we're defining a device in which lubricant is contained within a valve in a sealed environment in comparison with UPM, which is directing flow of oil through and out the valve. It's an entirely different purpose and for that reason, we're addressing a different problem. It's a problem of sealing versus a problem of lubricating. They're two different fields of art. Similar to in-ring clay, where petroleum was defined as a field, as an endeavor that was too broad. In one device, you had delivery of petroleum through an underground formation and the claimed invention was storage of petroleum. We have also identified the Alamet case in which a lubricating gun was the claimed invention. The reference was an oil tank for delivering oil. Just because it was directed to lubrication, it was not considered to be in the same field of endeavor. Therefore, we contend that the oil cup of UPM is not in the same field of endeavor and it is disqualified as a primary reference in the combination with the secondary reference, UPM and Fisher. Also, a very important point, the combination of references of UPM and Fisher do not disclose or suggest the elements of our claims. Principally, three elements are not disclosed by this combination. The first element is the connection of the fitting to a member that extends from the valve. With our device, the fitting is screwed onto and it can be within and without the fitting, but the point is the fitting is connected to a member that extends from the valve. UPM has a lower end portion that is threaded that screws into the bearing.  There's no element extending from the bearing to connect to the UPM oil cup. That's one principle difference. Another difference is the connection of the button head fitting is perpendicular to the shaft of the valve. This is to make it easier to connect the coupling of the lubricating gun to the button head fitting. In UPM, the connection of the fitting is in line with the outlet, it's vertical. There's a hole in the top of the lid and this hole receives an elbow and the lubricating nipple. Those are two components. They are connected to the oil cup. It cannot be argued that the elbow is part of the oil cup, which they have tried to identify as showing this element of a lubricating nipple being positioned at right angles to the oil cup. In this case, our fitting. And finally, and most importantly, there is no disclosure or suggestion of a button head fitting. A button head fitting is well known in the art as demonstrated by the references to Schoenhaus and Cooper. And also, we've added the case of the Plasmax Industries case showing the significance of when and how a check valve is used. And none of these references cited by the examiner, either alone or the button head fitting of our invention, but the connection of a check valve to the button head fitting is not disclosed in Fisher and it's not disclosed in Murphy. The devices that are shown are spring and ball, spring-loaded balls. These are not check valves. They don't maintain pressure. They don't prevent backflow. They're what we term as breathers or a dust cover to prevent dirt and lubricant from entering the device. These are not check valves. In fact, Fisher discloses that the spring and ball combination is not necessary. It can be omitted. If a check valve is required to control the flow of fluid into a device under pressure and prevent backflow, it has to be clearly stated. And the prior references that we cited show that. There's no disclosure at all in the Fisher reference that that spring and ball is required to maintain pressure on the system or to prevent backflow. And if a spring and ball can be omitted, it's not a check valve. And furthermore, in regard to Murphy, there's an illustration of a spring and ball. That's all it is. It's an illustration. It's not identified, but there's reference to it as being connected or part of the lubricating nipple 12 of UPM. But that spring and ball is nothing more than a breather or a dust cover. And the significance of the spring and ball in Murphy and the lubricating device is a quick connection of the lubricating gun to the nipple. And in fact, that's such an important feature. It's defined in claims two and three in UPM. And the feature that's defined is the quick disconnect that's provided by this spring and ball connection. The check valve in Murphy is on the lubricating gun. It's spring, I think it's spring 60, sleeve 31, and another element, a valve 39. That's where the check valve is. It's on the lubricating gun. That's clearly disclosed in Murphy. It's not on the spring and ball. So those elements, all those elements are absent from the UPM reference in combination with Fisher. But most importantly, in this case, the teaching of UPM to include a check valve is against the teaching. There is absolutely no condition under which the UPM oil cup can operate with a check valve because it's based on gravitational flow. You read, carefully read the reference, substantial evidence that the flow of lubricant through the oil cup of UPM is based on gravity. It sits on top of the bearing. And initially, yes, it's injected with fluid from a lubricating gun as shown in Murphy. But the oil is filled in the cup and then the oil is flushed through the bearing to clear it out. The lubricating gun is removed. Pressure is relieved. This is a disclosure in UPM indicating that there cannot be a check valve at the nipple because if you're relieved, the pressure, there's no check valve because a check valve would prevent the flow of lubricant through the oil cup. So the pressure is relieved after the oil cup is filled and flushed. And that's continued, it continues to flow after the lubricating gun is removed. And that allows the flushing to continue. If we were to conclude that the board reasonably found UPM to be analogous art. Sure. If we conclude that the board was reasonable in finding that UPM is analogous art and that the board was reasonable in concluding that using Fisher's check valve in UPM's lubricating device would not render UPM to be inoperable, then would we affirm this case? No. Because why? Because a check valve cannot work at the lubricating nipple of UPM and we prove that analytically. I'm sorry. Part of my hypothetical question is premised on affirming the board's finding that your argument about combining Fisher's check valve with UPM as being inoperable, the board's finding that that's not persuasive. So I'm basically taking away from you the inoperability argument. Well... Combining the two references. Okay, let's... And then if that's taken away from you, as well as your analogous art argument, then does that lead to an affirm here? No. No, sir. Because why? It does not because the principle of operation of UPM is gravitational flow of oil from the oil cup to the bearing. That is the principle of operation. You put a check valve at the inlet of UPM, you don't have the necessary prerequisites for flow. Gravitational flow of oil from the oil cup is determined by the atmospheric pressure at the inlet, atmospheric pressure at the outlet. It's undisputed that the outlet of UPM is atmospheric. You have a vessel. In the vessel is a volume of fluid. So your response to my question is that it's just inoperable to add Fisher's check valve to UPM? Any check valve... Is that a yes? Yes. Yes. Okay. But the point I want to make is that there is substantial evidence in the UPM reference that it cannot operate with a check valve because of the principle of gravitational flow. You have a vessel. The outlet of the vessel? Mr. Kravich, you've used your primary time and all of your rebuttal time. We have a lot of cases, so we're going to need to move on and hear from the other side at this point. Ms. Kaprowski? No. Ms. Stewart? May it please the court. As this court has said many times, the focus of the inquiry is not the purported benefits of the invention or various embodiments or principles that are not claimed. It's the words of a claim, and the claims here are very broad, and they claim a fitting assembly to lubricate and seal a valve. And the elements of those claims, again, are very broad. We just need a base with an opening, a vertical member, and a second opening at the top of the vertical member, and the button head fitting. There is nothing in the claims about the interior of the chamber being under pressure. There's nothing about that. The only discussion of the design of the button head fitting with a check valve is this idea that it's a spring-loaded ball. And the examiner was able to find those elements both within UPM by making a logical inference from UPM that you wouldn't want to have leakage of the lubricant, and also by pointing to Murphy, which was incorporated, or it said that UPM was adapted to operate with Murphy, which showed the spring-loaded ball. If for some reason the court felt that that was not enough, the examiner came back and said that we can also look to Fisher. Fisher is a similar lubricating fitting apparatus, and Fisher shows the ball, and that can be combined with UPM to teach all of the elements of the claim. So, it appears that the bulk of Mr. Adams' argument really related to the fact of inoperability and of the chamber being under pressure, but as I stated, that's not claimed, and even some of the evidence that was cited by Kravitch and Mr. Adams does not suggest that a check chamber under pressure. And there I'm referring in PLASPAC, which is cited by Mr. Kravitch, that talks about preventing backflow. It doesn't talk about the chamber being under pressure. Schoenweiss, just as Mr. Adams said, talks about sealing with the lubricating portion and the plug. It doesn't talk about the chamber being under pressure. So, for those reasons, if you look to the actual language of the claims and you don't import limitations from the specifications or import limitations that are not even in the specification, it just wouldn't be possible for Mr. Kravitch to prevail here. If the panel doesn't have any other questions, we'll rest on our briefs. Thank you, Ms. Stewart. Mr. Adams, she didn't touch on a lot of issues, so contain yourself to what she did touch on, and we'll restore one minute of rebuttal time. It's fundamental with a button head fitting that includes a check valve. Dr. Kravitch did not invent a button head fitting. He's using a button head fitting in an efficient way to lubricate and seal a valve. Under pressure, we have defined that the fluid is introduced into the valve under pressure. That pressure is sufficient to prevent the escape of lubricant or any fluid from inside to outside the valve. Now, the important point is that there is no basis for the examiner's conclusion that it's necessary for the check valve of UPM to prevent backflow or to maintain the system under pressure. Now, an issue has been taken that a check valve doesn't have to include a – is not pressurized. It is. Check valves are always pressurized. The references show that. So that if you put a check valve at the inlet of UPM, you have zero pressure. You put – the open end of the UPM outlet is atmospheric. The atmospheric pressure coming up from the outlet overcomes the weight of the fluid in the vessel. The gravitational force of the fluid in the vessel is Pascal's Law. Its density times height has nothing to do with the volume. We've been taken to task by the patent office that the device that we created to show the operation was not the right size. It was too large. Volume has nothing to do with the equation that the inlet pressure atmospheric is balanced by the outlet pressure atmospheric. The resultant pressure is the gravitational flow. That's how UPM works. You put a check valve at the inlet of UPM, you seal it off, and there's no flow. Mr. Adams, we're way beyond your time once again. So we need to bring this case to a close. I thank both counsel for their arguments. The case is taken under submission.